Napolean **SIMON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 39776.

Court of Criminal Appeals of Texas.

Nov. 2, 1966.

Rehearing Denied Dec. 14, 1966.

Charles W. Tessmer, Dallas (On Appeal Only), Ronald R. Waldie, Dallas (On Appeal Only), Ralph L. McDowell, Dallas (On Appeal Only), Emmett Colvin, Jr., Dallas (On Appeal Only), for appellant.

Henry Wade, Dist. Atty., John H. Stauffer and Tom F. Reese, Jr., Asst. Dist. Attys., Dallas and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

BELCHER, Commissioner.

The conviction is for burglary of a private residence at night with the intent to commit rape; the punishment, five years.

The prosecutrix testified that she was a widow, 26 years of age, and on August 6 and 7, 1964, she actually occupied and used as her residence one side of a duplex with her two sons, ages eleven and three; that the other side of the duplex was not occupied during the time here in question; that about 12:30 a. m., August 7, she retired in her bedroom, the boys having retired in another bedroom; that an air conditioner in her bedroom was operating and a fan was running in the boys' room and that her apartment was closed; that about 2 a. m. she was awakened by someone tapping her on the shoulder, and when she turned to look a man said, "G—d—it, don't you scream; don't holler, do nothing or I'll kill you"; that he told her he wanted to have sexual intercourse with her; that as she straightened out in the bed she kicked him against the dresser, and he came back "full force" and hit her several times on the face; that while there were no lights on in the bedroom, the 100 watt light in the bathroom was on and shining across her bed, allowing her to see that her assaillant was a young Negro man with sideburns coming down nearly to a handkerchief covering his mouth but exposing his nose, ears, sideburns, and hair; that he was wearing a light colored shirt and had his pants unzipped with his penis exposed; that she had never before seen her assailant; that as he leaned across

her bed he held a butcher knife under her throat and as she screamed he threatened to kill her; that after she screamed and he had struck her he left the room, and as she started to leave through an open bedroom window, which was closed when she retired, she saw the man run from the yard; that she then awoke her boys and notified the police who arrived at the scene in five or ten minutes. Within a few minutes a small card was found in her bed in the bedroom; a book of matches was found inside the living room near the door; a butcher knife was found by the side of the porch; and a small book was found in the driveway; and while testifying the prosecutrix identified each of these objects, and said the knife belonged to her and she kept it in the kitchen; and that the man did not have her consent to enter her house or have carnal intercourse with her.

The prosecutrix further testified that about two weeks after the attack in her home she viewed a four-man lineup at the city hall, which was presented three separate times, with the men in different positions in the line each time; and while testifying on the main trial she identified the appellant as the man who attacked her in her apartment; and she further identified the appellant as the same man she had identified in the lineups at the city hall.

Testifying in his own behalf, the appellant denied that he committed the offense charged, that he did not know the prosecutrix or where she resided, and named the places he had been on the night of August 6–7, 1964, and the court properly submitted alibi to the jury. Further, while testifying, the appellant looked at the book of matches introduced by the state and said that they were like those in his home.

On direct examination, Mrs. McCorter, the appellant's aunt, testified that in July, 1964, the appellant asked her if she had seen his address book saying "he had been looking for it." Other testimony pertaining to the address book is shown in connection with a contention urged for reversal.

Appellant contends that the trial court erred in refusing to sustain his objection to the testimony of Officer Peace when he testified to an incriminating statement made by the appellant while under arrest; and the court also erred in refusing to withdraw such testimony.

Detective Peace testified that the address book identified as State's Exhibit No. 4 belonged to the defendant. Appellant's counsel objected and moved to strike such testimony. Voir dire examination was allowed during which Detective Peace testified that he secured his knowledge as to the ownership of the book from the statement of the defendant made while he was under arrest.

■ As a witness in his own behalf, both on his direct and cross-examination, appellant testified that the address book identified as State's Exhibit No. 4 belonged to him; that he usually kept it in his shirt pocket but had lost it before his last pay day in July.

The book was found in the driveway by the apartment of the prosecutrix within 20 or 30 minutes after the assault. In view of the testimony of the appellant pertaining to the book no reversible error is presented. 5 Tex.Jur.2d 704, Sec. 446.

It is insisted that the trial court committed reversible error in permitting the state to bolster the testimony of the unimpeached complaining witness who had identified the appellant at the police lineups.

The testimony of the state and that of the appellant while testifying in his own behalf, without objection, describes the three separate four-man lineups with the men in different positions each time.

Reversal is strenuously urged on the ground that the following testimony of Officer Peace bolstered the testimony of the prosecutrix:

"Q   Total of three. At the conclusion of this showing, after the three different arrangements that you had set

up, was the Defendant released from custody?

"A He was not."

 Appellant insists that this line of testimony could have no other purpose than to bolster the identification of the appellant by the unimpeached complaining witness. There was no objection to the testimony. It does not constitute fundamental error. No error is presented.

Notice of appeal was given prior to January 1, 1966.

■ The evidence is sufficient to support the conviction.

The judgment is affirmed.

Opinion approved by the Court.